**BLAIR, Commissioner of Internal Revenue, v. OESTERLEIN MACHINE CO.\***

(Court of Appeals of District of Columbia. Submitted October 10, 1926. Decided January 3, 1927.)

No. 4420.

1. **Internal revenue** ⊛⟹25—**Commissioner of Internal Revenue, on subpœna, must disclose to Board of Tax Appeals evidence considered in making finding as to deficiency in taxes (Rev. St. § 3167 [Comp. St. § 5887]; Revenue Act 1924, §§ 257 [a], 900 [Comp. St. §§ 6336⅛v, 6371⅝b]).**

Notwithstanding Rev. St. § 3167 (Comp. St. § 5887), and Revenue Act 1924, § 257 (a), being Comp. St. § 6336⅛v, the Commissioner of Internal Revenue is not warranted in refusing to obey subpœna of Board of Tax Appeals requiring him to submit to and file with board answers to interrogatories touching the evidence, data, and information on record in his office on which he based finding as to deficiency in payment of income and profit taxes, from which appeal was taken under section 900 (Comp. St. 6371⅝b).

2. **Internal revenue** ⊛⟹25—**Under statute, Board of Tax Appeals has full reviewing jurisdiction over findings of Commissioner, with power to investigate de novo (Revenue Act 1924, § 900, [e], [i], being Comp. St. § 6371⅝b).**

Under Revenue Act 1924, § 900 (Comp. St. § 6371⅝b), particularly subdivisions (e) and (i), Board of Tax Appeals is vested with full reviewing jurisdiction of Commissioner of Internal Revenue, including power to investigate de novo matters in controversy between government and taxpayer.

3. **Internal revenue** ⊛⟹25—**Jurisdiction of Board of Tax Appeals is not limited by discretionary powers vested in Commissioner, nor by inhibitions as to secrecy (Revenue Act 1924, § 900, [e], [i], being Comp. St. § 6371⅝b).**

The broad jurisdiction conferred on the Board of Tax Appeals by Revenue Act 1924, § 900 (Comp. St. § 6371⅝b), particularly subdivisions (e) and (i), is not limited nor controlled by any discretionary power vested in the Commissioner of Internal Revenue, nor by statutory inhibitions as to secrecy.

Appeal from Supreme Court of District of Columbia.

Suit by the Oesterlein Machine Company against David H. Blair, Commissioner of Internal Revenue. From a decree for plaintiff, defendant appeals. Affirmed.

Payton Gordon, L. A. Rover, and C. T. Hendler, all of Washington, D. C., for appellant.

G. E. Hamilton, J. J. Hamilton, and J. Robert Sherrod, all of Washington, D. C., for appellee.

*Certiorari granted 47 S. Ct. 591, 71 L. Ed. —.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice. This appeal is from a decree of the Supreme Court of the District of Columbia ordering and commanding David H. Blair, Commissioner of Internal Revenue, hereafter for convenience referred to as the Commissioner, to obey the subpœna of the defendant, United States Board of Tax Appeals, hereafter referred to as the Board, issued and served upon him in the appeal of the appellant company pending before said Board. The Commissioner was ordered by the decree "forthwith to submit to and file with said Board of Tax Appeals the answers in writing under oath to the questions of fact specified in said subpœna and schedule thereto annexed."

[1] The matter in issue involved a finding by the Commissioner that appellant company was deficient in payment of income and profit taxes for the years 1918, 1919, and 1920 in the net sum of $1,126.37. Appeal was accordingly taken to the Board of Tax Appeals, created by section 900 of the Revenue Act of 1924, 43 Stat. 336 (Comp. St. § 6371⅝b). In the course of the proceedings before the Board the subpœna in question was issued, calling upon the Commissioner to answer interrogatories in writing under oath touching the evidence, data, and information, on record in his office, upon which he based his finding. The subpœna was issued under the provisions of section 900 (i) of the Revenue Act of 1924.

The Commissioner answered the subpœna, or order of the Board, in part as follows: "I regret that it is necessary to inform you that the proper discharge of the duties of my office will not, in my opinion, admit the furnishing of the information called for in said interrogatories. The reasons prompting this decision are as follows: (1) The information called for in said interrogatories is communicated to me as Commissioner of Internal Revenue in the strictest confidence and is privileged. (2) Answer to the interrogatories will divulge information and data from the records in my office, the publication of which is prohibited by the provisions of section 3167 of the Revised Statutes. * * * Congress further emphasized the safeguard that should be thrown around inspection of tax returns by its enactment of section 257 (a) of the Revenue Act of 1924, which provides that the returns upon which the tax has been determined by me shall constitute

public records, but that they shall be open to inspection only upon order of the President, under rules and regulations prescribed by the Secretary and approved by the President. Certain definite exceptions are made by that section; for instance, the Committee of Ways and Means of the House of Representatives, Committee on Finance of the Senate, and certain others that are specifically mentioned."

In short, the Commissioner challenges the authority of the Board to review his finding on the ground: (1) That the assessment of a tax, or refusal to do so, under the special assessment provisions of the Revenue law, involves the exercise of discretion vested in him by law which is not reviewable; and (2) that such a review would result in the disclosure to the public of records in his office, in violation of section 3167, Revised Statutes (Comp. St. § 5887), as follows: "If any collector or deputy collector, or any inspector, or other officer acting under the authority of any revenue law of the United States, divulges to any party, or makes known in any other manner than may be provided by law, the operations, style of work, or apparatus of any manufacturer or producer visited by him in the discharge of his official duties, he shall be subject to a fine," etc.

Congress did not intend by this statute to close the door to judicial inspection of tax records in the custody of the Commissioner. Indeed, the statute itself provides for exceptions when it is otherwise "provided by law." Section 257 (a) of the Revenue Act (Comp. St. § 6336⅛v) furnishes a notable exception: "Returns upon which the tax has been determined by the Commissioner shall constitute public records; but they shall be open to inspection only upon order of the President and under rules and regulations prescribed by the Secretary and approved by the President."

Considering section 3167 of the Revised Statutes, appearing in the Revenue Act of 1918 (40 Stat. 1057) the Commissioner, with the approval of the Secretary of the Treasury, on January 12, 1920, in Treasury Decision 2962, said:

"There are numerous provisions in the statutes constituting the doing or failure to do certain things, offenses against the United States, and providing for collecting unpaid taxes in courts and for bringing suits to recover taxes and penalties wrongfully collected. These provisions would be of no avail, were it held that the returns themselves, or certified copies thereof provided for in section 822, Revised Statutes, could not be used by the government as evidence in such litigation or in preparation for same. Manifestly Congress did not, when it enacted section 3167, Revised Statutes, intend to defeat prosecutions and suits in court for which it has specifically provided.

"Income returns filed with the department, as public records of the department, and public records in the Treasury Department, are of right available as evidence in litigation in court, unless there is some statute making it unlawful to use them as such. * * * As, therefore, the use of income returns or copies thereof in connection with litigation in court, where the United States government is interested in the result, is provided by law, such returns or copies may be furnished for use without a violation of the provisions of section 3167, Revised Statutes, as amended."

Thus it appears that the Commissioner himself, through the Secretary of the Treasury, has established a departmental policy respecting the furnishing of records and data in aid of judicial proceedings in the courts, which includes, by the most reasonable interpretation, the present case. It is difficult to conceive of any judicial proceeding more intimately dependent upon the evidence, records, and data, on which the findings of the Commissioner in these tax cases is based, than the proceedings reviewing those decisions on appeal by the Board of Tax Appeals.

This brings us to the consideration of the authority of the Commissioner and an analysis of his jurisdiction in the premises. The procedure to determine the deficiency in the present case, growing out of appellee's income tax for the years 1918, 1919, and 1920, is found in title II of the Revenue Act of 1924. Section 274 of the act (Comp. St. § 6336⅛zz[1]) provides:

"(a) If, in the case of any taxpayer, the Commissioner determines that there is a deficiency in respect of the tax imposed by this Title, the taxpayer, except as provided in subdivision (d), shall be notified of such deficiency by registered mail, but such deficiency shall be assessed only as hereinafter provided. Within 60 days after such notice is mailed the taxpayer may file an appeal with the Board of Tax Appeals established by section 900. (b) If the Board determines that there is a deficiency, the amount so determined shall be assessed and shall be paid upon notice and demand from the collector.

No part of the amount determined as a deficiency by the Commissioner but disallowed as such by the Board shall be assessed."

The term "deficiency" is defined in section 273 of the act (Comp. St. § 6336⅛zz) as follows: "The amount by which the tax imposed by this title exceeds the amount shown as the tax by the taxpayer upon his return; but the amount so shown on the return shall first be increased by the amounts previously assessed (or collected without assessment) as a deficiency, and decreased by the amounts previously abated, credited, refunded, or otherwise repaid in respect of such tax." From this it will be observed that a deficiency tax is merely the difference between the amount of tax imposed and the amount returned and paid by the taxpayer.

Turning to the jurisdiction of the Board, section 900 of the Revenue Act, among other things, provides: "(e) The Board and its divisions shall hear and determine appeals filed under sections 274, 279, 308, and 312. * * * (i) For the efficient administration of the functions vested in the Board or any division thereof, any member of the Board may administer oaths, examine witnesses, and require, by subpœna ordered by the Board or any division thereof and signed by the member, (1) the attendance and testimony of witnesses, and the production of all necessary returns, books, papers, documents, correspondence, and other evidence, from any place in the United States at any designated place of hearing; (2) the taking of a deposition before any designated individual competent to administer oaths under this Act; and (3) the answer in writing under oath to any question of fact submitted. In the case of a deposition the testimony shall be reduced to writing by the individual taking the deposition or under his direction and shall then be subscribed by the deponent. Any witnesses summoned or whose deposition is taken under this subdivision shall be paid the same fees and mileage as are paid witnesses in the courts of the United States."

[2] It is clear, we think, from the foregoing provisions of the act, that the Board is vested with full reviewing jurisdiction over the findings of the Commissioner in cases where a deficiency arises from a determination under the special assessment provisions of the act. The appellate power includes the authority, not only to review, but to investigate de novo, the matters in controversy between the government and the taxpayer. To this end the Board may affirm, set aside, or modify, in such manner and to such extent as it may be advised, the findings of the Commissioner.

[3] Nor is the broad jurisdiction thus conferred upon the Board limited or controlled by any discretionary power vested in the Commissioner, or statutory inhibitions as to secrecy. Without stopping to analyze sections 327 and 328 of the Revenue Acts of 1918 and 1921 (Comp. St. §§ 6336⅟₁₆j, 6336⅟₁₆k) we find no duties there imposed upon the Commissioner which rise to the dignity of unreviewable discretion. The mandatory and alternative methods there employed for reaching a lawful decision, while calling for the exercise of discretion, are merely the means pointed out for reaching a judicial decision, subject to review on appeal, all of which, when appeal is taken, pass to the Board, to be in turn disposed of by it according to its best judgment and discretion.

The Board is an independent agency of the executive branch of the government, vested with limited judicial powers, to which the taxpayer may appeal before payment of an additional assessment of income, excess profits, or war profits taxes. This tribunal, unless clearly restricted by express statutory limitations, will be presumed to possess the power to call to its aid every agency essential to the full and complete investigation of the issues committed to its jurisdiction. Sustaining, as we must, the power of Congress to call this Board into existence, and to vest it with the broad jurisdiction conferred by the Revenue Act, it would be a travesty to hold that the evidence upon which that jurisdiction may be intelligently exercised can be withheld by the subordinate officer of the government, whose decisions the Board is specially vested with power to review. The statutes imposing secrecy upon the Commissioner are not intended to impede the wheels of justice, or to in any manner interfere with the right accorded the taxpayer to avail himself, to the fullest extent, of the protection afforded him by appeal to the Board. The right of appeal, and the authority of the Board to subpœna witnesses and enforce the production of records and other data, is in the nature of special legislation, and to that extent limits the operation of the general secrecy acts.

We are not impressed by the glowing picture drawn in the brief of the solicitor, in behalf of the Commissioner, of the possibility of unlimited abuse of this power by the Board. It is asserted that there is no limitation to the power of the Board to call upon the Commissioner for the records of all "the thousands of taxpayers that were available

to the Commissioner of Internal Revenue when he made his determination." It must be assumed that the Board will not abuse its power; that it will call only for such specific documents and data as will throw light on the case in hand, and only for the records of such corporations, or persons, as were used by the Commissioner for comparative purposes. The power, however, to call for data and records in the possession of the Commissioner, is vested wholly in the discretion and judgment of the Board; the Commissioner has no option in the matter. The subpœna in this case quiets this alarm, since the 12 companies are specifically named from whose returns certain specified data are requested. The data are described in the petition for the subpœna as follows: "The 'data sheet,' referred to in the following interrogatories, means the comparative statistics data sheet, Treasury Department, Internal Revenue Bureau, form 7365 of August, 1921, ordinarily used in compiling comparative data for the purpose of determining excess profits tax in special cases under the provisions of section 328 of the Revenue Act of 1918."

This is sufficiently specific to limit the data called for to the particular records relevant to the case under consideration. The right of appeal here afforded has special reference to the protection of the taxpayer from possible arbitrary, unjust, or mistaken action by the officials of the Revenue Department. To sustain the contention of the Commissioner would amount ·to the practical nullification of the act in so far as it provides for the right of appeal. It would impute to Congress the inconsistency of providing for this important Board, imposing upon it broad jurisdiction, and then tying its hands and rendering it impotent. This was not the intention of Congress, and it is not the intention of the law.

The decree is affirmed, with costs.