**BOEING AIRPLANE COMPANY,**
**Appellant**

v.

**Thomas COGGESHALL, Chairman, The**
**Renegotiation Board, Appellee.**

**Thomas COGGESHALL, Chairman, The**
**Renegotiation Board, Appellant**

v.

**BOEING AIRPLANE COMPANY,**
**Appellee.**

**BOEING AIRPLANE COMPANY,**
**Cross-Appellant**

v.

**Thomas COGGESHALL, Chairman, The**
**Renegotiation Board, Cross-Appellee.**

Nos. 14958, 15311, 15312.

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 17, 1959.

Decided June 9, 1960.

Messrs. Numa L. Smith, Jr., Washington, D. C. and Andrew M. Williams, Seattle, Wash., of the bar of the Supreme Court of Washington, pro hac vice, by special leave of court, with whom Messrs. Barron K. Grier, John S. Nolan, Washington, D. C., and Lowell P. Mickelwait, Seattle, Wash., were on the brief, for appellant in Nos. 14,958 and 15,312 and appellee in No. 15,311.

Mr. John G. Laughlin, Jr., Attorney, Department of Justice, with whom Asst. Atty. Gen. George Cochran Doub, Messrs. Oliver Gasch, U. S. Atty. and Samuel D. Slade, Attorney, Department of Justice, were on the brief, for appellee in Nos. 14,958 and 15,312 and appellant in No. 15,311. Mr. Harland F. Leathers, Attorney, Department of Justice, also entered an appearance for appellee in No. 14,958.

Before WASHINGTON, BASTIAN and BURGER, Circuit Judges.

WASHINGTON, Circuit Judge.

These are three appeals from orders by the District Court on motions relating to a petition to enforce a subpoena duces tecum. The subpoena, which demanded certain documents in the possession of the United States Renegotiation Board and the Los Angeles Regional Renegotiation Board, was issued by the Tax Court of the United States pursuant to Section 108 of the Renegotiation Act of 1951, 65 Stat. 21, as amended, 70 Stat. 791 (1956), 50 U.S.C.A.Appendix, § 1218. Enforcement was sought in the District Court by Boeing Airplane Company, appellant in Nos. 14,958 and 15,-312 and appellee in No. 15,311. Jurisdiction over the enforcement petition was exercised by the District Court under Section 7604(a) of the Internal Revenue Code of 1954, 26 U.S.C. § 7604(a) (1958). See Blair v. Oesterlein Machine Co., 1927, 57 App.D.C. 75, 17 F.2d 663, modified and affirmed, 1927, 275 U.S. 220, 48 S.Ct. 87, 72 L.Ed. 249.

Boeing wants the documents in question for its own and the Tax Court's use in a proceeding before the Tax Court under Section 108 of the Renegotiation Act of 1951, supra.[1] The Section 108 pro-

---

1. Section 108 provides in pertinent part:

    "Any contractor or subcontractor aggrieved by an order of the Board determining the amount of excessive profits received or accrued by such contractor or subcontractor may * * * file a petition with The Tax Court of the United States for a redetermination thereof. Upon such filing such court shall have exclusive jurisdiction, by order, to finally determine the amount, if any, of such excessive profits received or accrued by the contractor or subcontractor, and such determination shall not be reviewed or redetermined by any court or agency. The court may determine as the amount of excessive profits an amount either less than, equal to, or greater than that determined by the Board. A pro-

ceeding before the Tax Court to finally determine the amount, if any, of excessive profits shall not be treated as a proceeding to review the determination of the Board, but shall be treated as a proceeding de novo. For the purposes of this section the court shall have the same powers and duties, insofar as applicable in respect of the contractor, the subcontractor, the Board, and the Secretary, and in respect of the attendance of witnesses and the production of papers, notice of hearings, hearings before divisions, review by the Tax Court of decisions of divisions, stenographic reporting, and reports of proceedings, as such court has under sections 1110, 1111, 1113, 1114, 1115(a), 1116, 1117(a), 1118, 1120, and 1121 of the Internal Revenue Code in

ceeding is one to determine the amount of money, if any, which Boeing must return to the United States as a result of allegedly excess profits earned on contracts with the United States Air Force. The subpoena requires Mr. Coggeshall, Chairman of the United States Renegotiation Board, to bring to the Tax Court "all of the reports, correspondence and data contained in or constituting the files of the Los Angeles Regional Renegotiation Board and of The Renegotiation Board of the United States in connection with the renegotiation of Boeing Airplane Company for the year 1952 * * *." These files included reports by certain Air Force procurement officials, by the Office of Review of the Renegotiation Board, and by the Office of Economic Review of the Renegotiation Board, in addition to memoranda, analyses, and other matter relevant to the deliberations of the Regional Board and the Board in Washington. The papers to be subpoenaed related not only to the costs, efficiency, and prices of Boeing but covered similar data with respect to Boeing's competitors.

On January 7, 1959, the District Court, refusing enforcement, entered summary judgment for Mr. Coggeshall, who had claimed that production of the documents "would be injurious to the public interest" since the individual Board members would be inhibited in their deliberations and other contractors would be deprived of the protection against disclosure provided by Part 1480 of the Board's regulations.[2] Boeing appealed from the summary judgment and that appeal is our No. 14,958.

Pending the appeal in No. 14,958, Boeing moved in the District Court under Rule 60(b), Fed.R.Civ.P., 28 U.S.C., to reopen the enforcement proceedings in that court. This motion was based on further developments in the Tax Court. After the District Court's refusal to enforce the Tax Court subpoena, certain Air Force officers had testified for the Government in the Tax Court. To impeach the credibility of these officers,

the case of a proceeding to determine a deficiency. * * *"

Section 1114(a) of the Internal Revenue Code of 1939 is now to be read as Section 7456(a) of the Internal Revenue Code of 1954. 26 U.S.C. § 7852(b) (1958). Section 7456(a) confers the power to issue subpoenas upon judges of the Tax Court when performing the functions of the court. 26 U.S.C. § 7456 (a) (1958).

2. Part 1480, 32 C.F.R. § 1480.4 (1954), includes the following provisions:

"§ 1480.4 *Access to renegotiation records*—(a) *The public.* Upon request to the Secretary of The Renegotiation Board, Washington 25, D. C., any person may inspect during usual business hours, at the office of the Secretary, a copy of the transcript of any official Board actions granting exemptions of contracts from renegotiation under the act, except in cases where such Board action is of a nature required to be held confidential for good cause. The purpose of this paragraph (a) is to make available for public inspection Board action on applications for exemptions, when such actions are not issued as regulations and are not required to be held confidential for good cause.

* * * * *

"(d) *Persons properly and directly concerned in renegotiations.* Persons properly and directly concerned in any renegotiation proceeding, or their duly authorized representatives, may apply in writing to the Secretary of The Renegotiation Board for access to records of such proceeding. Access will be granted at times and places which are convenient in the light of the physical location of the records to which access is sought. Access will not be furnished under this paragraph (d) to memoranda and reports prepared by Government employees for use within the Government or to any other material which, in the opinion of the Board, should be held confidential for good cause. A person will not be deemed properly and directly concerned in any renegotiation record unless it relates to renegotiation of the contracts of such person, or of a partnership or joint venture in which he was a partner or joint venturer during the period renegotiated, or unless the person has such other pecuniary interest in the result of a renegotiation proceeding that, in the opinion of the Board, he would be caused unreasonable hardship by being denied access to records relating thereto."

Boeing renewed in the Tax Court its earlier request for subpoena. The Tax Court stated that its earlier subpoena was still outstanding; thus, Boeing sought enforcement of the same subpoena a second time in the District Court.

Because of the new events in the Tax Court, the District Court vacated its order of January 7, 1959, insofar as it related to reports of the Air Force concerning the matters in dispute before the Tax Court, and enforced the subpoena accordingly. No. 15,311 is an appeal by Mr. Coggeshall from that order of enforcement, entered May 11, 1959. No. 15,312 is an appeal from the same order by Boeing to the extent that the court refused to vacate its original judgment and fully enforce the original petition. No. 14,958 is Boeing's appeal from the District Court's first refusal to enforce the subpoena.[3]

With one exception, the issues before the court are essentially the same in all three cases. On the motion for summary judgment in No. 14,958, Boeing based its petition on an alleged general right of the Tax Court to secure all relevant and material information, urging the usefulness of the Board files for that purpose. On the motion involved in Nos. 15,311 and 15,312 the Renegotiation Board files were sought, ostensibly, for the more limited purpose of impeaching the credibility of particular witnesses. In each situation, however, full enforcement of the subpoena poses the same dangers to the Board and persons having dealings with the Board, since Boeing seeks the Board files not only for examination by the Tax Court but for its own examination as well. To protect the interests of the Board and the people who deal with it, the Chairman resists the subpoena on the ground, first, that Boeing has made no showing of necessity, and, second, that the documents are privileged.

■ Enforcement of this subpoena is governed by the Federal Rules of Civil Procedure. See Fed.R.Civ.P. 81(a) (3). In particular, Rules 26(b), 30(b), and 45(b) and (d) are controlling. These rules must be read in *pari materia*. See, e. g., Demeulenaere v. Rockwell Manufacturing Co., D.C.S.D.N.Y.1952, 13 F.R. D. 134; Rosseau v. Langley, D.C.S.D. N.Y.1945, 7 F.R.D. 170. Rules 45(d) and 26(b) establish the outer limits of enforcement. Rule 45(d) permits a subpoena to order any person to produce papers "which constitute or contain evidence relating to any of the matters within the scope of the examination permitted by Rule 26(b), but in that event the subpoena will be subject to the provisions of subdivision (b) of Rule 30 and subdivision (b) of this Rule 45." Rule 26 (b) permits the discovery of "any matter, not privileged, which is relevant to the subject matter involved in the pending action," but is also limited by Rule 30(b).

Rules 30(b) and 45(b) impose the following restrictions on enforcement under Rules 45(d) and 26(b): Rule 30(b) confers broad power on the court, "for good cause shown," to afford relief from a subpoena "which justice requires to protect the party or witness [under subpoena] from annoyance, embarrassment, or oppression."[4] Rule 45(b) au-

---

3. Appeal No. 14,958 was reinstated by order of this court, after we had earlier remanded the case to the District Court to enable it to enter a new order on Boeing's motion to set aside the District Court's order of January 7, 1959.

4. Rule 30(b) provides:
"(b) Orders for the Protection of Parties and Deponents. After notice is served for taking a deposition by oral examination, upon motion seasonably made by any party or by the person to be examined and upon notice and for

good cause shown, the court in which the action is pending may make an order that the deposition shall not be taken, or that it may be taken only at some designated place other than that stated in the notice, or that it may be taken only on written interrogatories, or that certain matters shall not be inquired into or that the scope of the examination shall be limited to certain matters, or that the examination shall be held with no one present except the parties to the action and their officers or counsel, or that after being sealed the deposition shall

thorizes the District Court to "quash or modify the subpoena if it is unreasonable and oppressive." Thus, if the documents under subpoena in this case are relevant to the subject matter of the Tax Court proceeding, the subpoena should be enforced on a showing of good cause unless the documents are privileged or the subpoena is unreasonable, oppressive, annoying, or embarrassing. If the District Court believes the subpoena has a meritorious basis but should not be enforced as drafted, it has authority under Rule 30(b) to modify the subpoena and impose such conditions on enforcement as justice may require.

■■ Broad as the subpoena in this case may be—seeking all documents relating to the Boeing renegotiation for 1952 which are in the files of the Renegotiation Board of the United States and the Los Angeles Renegotiation Board—it would appear to ask only for documents which are, within the meaning of Rule 26(b), relevant to the Tax Court proceeding. Under Rule 26(b) relevancy is defined in terms of the likelihood that useful evidence may be uncovered.[5] Since Rule 45(d) specifically incorporates this standard, the court need not consider whether or not the papers, themselves, would be admissible in evidence. Rosseau v. Langley, supra. Moreover, it is doubtful that an admissibility test would be proper in this case, irrespective of the Federal Rules, since the District Court might then be passing on evidentiary matters, which are primarily (if not solely) within the jurisdiction of the Tax

Court. Cf. Macauley v. Waterman S.S. Corp., 1946, 327 U.S. 540, 66 S.Ct. 712, 90 L.Ed. 839; United States v. California Eastern Line, Inc., 98 U.S.App.D.C. 1, 231 F.2d 754, certiorari denied, 1956, 352 U.S. 848, 77 S.Ct. 35, 1 L.Ed.2d 59. Insofar as the Board suggests that the subpoenaed documents are irrelevant, we must disagree.[6]

■■ Nonetheless, when a party objects to the enforcement of a subpoena, enforcement depends preliminarily on a showing of good cause by the party seeking production. "Good cause" may ordinarily be sustained by a claim that the requested documents are necessary to establishment of the moving party's claim or that denial of production would cause the moving party "undue hardship or injustice."[7] And the burden of showing good cause is an affirmative one in that it is not satisfied merely by a showing that justice would not be impeded by production of the documents. See 4 Moore, Federal Practice, para. 34.08, p. 2451. See, also, Hickman v. Taylor, 1947, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451; United States v. Great Northern Railway Co., D.C.N.D.Cal.1955, 18 F.R.D. 357. At least insofar as the Tax Court has expressed its own interest in the subpoenaed documents, it would seem that a sufficient showing of necessity has been made. To be sure, the subpoenaing by the Tax Court of Renegotiation Board documents appears to be an unusual procedure. But the Tax Court must decide the issue of excess profits de novo, and a fair determination is essential. Unlike

be opened only by order of the court, or that secret processes, developments, or research need not be disclosed, or that the parties shall simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court; or the court may make any other order which justice requires to protect the party or witness from annoyance, embarrassment, or oppression."

5. See, e. g., Rose v. Bourne, Inc., D.C.S.D. N.Y.1953, 15 F.R.D. 362. See, also, 4 Moore, Federal Practice paras. 24.16, 34.10 n. 5 (1950).

6. The Board contends that the subpoenaed Air Force reports are irrelevant because the officers who prepared them did not appear before the Tax Court. The Board also asserts that its files, generally, are irrelevant because none of the Government's case before the Tax Court came from these files.

7. 4 Moore, supra, para. 34.08, p. 2450; see United States v. 50.34 Acres Land, D.C.E.D.N.Y.1952, 12 F.R.D. 440; Royal Exchange Assurance v. McGrath, D.C. S.D.N.Y.1952, 13 F.R.D. 150.

the situation in most civil disputes, Boeing has no other effective remedy against the Government's claim to excess profits: if Boeing had not sued in the Tax Court, the Renegotiation Board's determination would have been final and legally enforceable. Once the Tax Court determines the amount of excess profits, that determination is, for most practical purposes, unreviewable. See Aircraft & Diesel Corp. v. Hirsch, 1947, 331 U.S. 752, 769, 67 S.Ct. 1493, 91 L.Ed. 1796. At the same time, a strong public interest in preserving the revenues of the Federal treasury mitigates against resolving renegotiation cases in favor of the private claimant on the basis of inadequate evidence. An informed judgment by the Tax Court is therefore essential to fair handling of a dispute over excess profits. If the Tax Court, in the exercise of its discretion, decides to issue a subpoena to assist it in achieving a fair determination of excess profits, the District Court must give that fact substantial weight. Although the Tax Court stated it did not desire documents relating to "proceedings between the Board and the Los Angeles Board," it did say "that anything material contained in those files, this Court needs and wants." Necessity has been established, at least insofar as the examination sought by the Tax Court is concerned.

Since the Tax Court could not, in fairness to either party, base a decision on *in camera* consideration of evidence, and since for practical purposes Boeing is a fact-finding arm of the Tax Court in this case, Boeing is entitled to assert and benefit from the Tax Court's interest. Speaking of the Board of Tax Appeals, the predecessor of the Tax Court, it has been aptly said, in a case closely resembling the present one:

"The Board is an independent agency of the executive branch of the government, vested with limited judicial powers, to which the taxpayer may appeal before payment of an additional assessment of income, excess profits, or war profits taxes. This tribunal, unless clearly restricted by express statutory limitations, will be presumed to possess the power to call to its aid every agency essential to the full and complete investigation of the issues committed to its jurisdiction. Sustaining, as we must, the power of Congress to call this Board into existence, and to vest it with the broad jurisdiction conferred by the Revenue Act, it would be a travesty to hold that the evidence upon which that jurisdiction may be intelligently exercised can be withheld by the subordinate officer of the government, whose decisions the Board is specially vested with power to review." Blair v. Oesterlein Machine Co., 17 F.2d 663, at page 665, affirmed as modified, 1927, 275 U.S. 220, 48 S.Ct. 87, 72 L.Ed. 249.

■ We must conclude, therefore, that enforcement permitting examination by Boeing should have been granted unless the documents are privileged or the subpoena was unreasonable, oppressive, annoying, or embarrassing. The Chairman and the Board do not here contend that the subpoena falls in any of these latter categories. But a claim of privilege is asserted, particularly with regard to recommendations to the Board by those in concert with it. To the extent that the documents deal with recommendations as to policies which should be pursued by the Board, or recommendations as to decisions which should be reached by it, the claim of privilege is well founded. In fact, the Tax Court itself has disavowed any interest in the Board's deliberations. Thus, the showing of necessity is not one which impinges on the integrity of the Board's decision-making process, and that process should be protected.

■ But the files of the Board may well contain investigatory or other factual reports by Board employees, or reports and recommendations from persons outside the Board, which are relevant to a determination of excess profits. Investigatory or factual reports not containing state or military secrets—and the

Government does not suggest that any such secrets are here involved—have not ordinarily, without more, supported claims of privilege.[8] And we do not think that documents of this routine factual nature constitute "advice" by persons in a "common cause."[9] Persons outside the Board do not have common cause with it since they do not share in the quasi-judicial aspect of its responsibilities. The likelihood seems slight that in the future persons outside the Board, be they other public officials or private persons, will avoid providing the Board with all information requested if production of documents is judicially ordered in this case. None of the information is said to come from persons who would be subject to retaliation if their statements were disclosed. Cf. United States v. Kohler Co., D.C.E.D.Pa.1949, 9 F.R.D. 289. The Board's own regulations protect these persons, in all non-judicial circumstances, against voluntary disclosure of information by the Board. Contractors are in fact obliged under pain of criminal sanction to supply information requested by the Board. Thus, we are not concerned with a situation where the Government depends on volunteered information from private citizens.[10] And the public officials responsible for materiel procurement would presumably cooperate with the Board as a part of the discharge of their responsibilities for the efficient operation of their respective departments. If outsiders are, as a result of disclosure, in any way inhibited in offering opinions to the Board, the deterrent effect will probably be salutary rather than undesirable, since the discouraged opinions could only be of a kind calculated to prejudice the contractor un-der renegotiation and, if relied on by the Board, would be expressions which the contractor should have had an opportunity to confront and rebut. But even if disclosure would somehow impair the Board's fact-finding processes, the effect on the Board seems insignificant compared to the importance of this information to the Tax Court in discharging its duty, affecting both Boeing and the public treasury, to arrive at a fair and accurate computation of excess profits.

Nor do we think that to give Boeing access to the Board's files on the limited basis just outlined—namely, access to factual and investigatory reports—would be to condone an unwarranted fishing expedition. The documents in question would appear to be ones peculiarily available to the Board because of its continuing surveillance of contractors generally and because of its close relationship with the Government contracting agencies. See Blair v. Oesterlein Machine Co., 57 App.D.C. 75, 17 F.2d 663, modified and affirmed, 1927, 275 U.S. 220, 48 S.Ct. 87, 72 L.Ed. 249. The Boeing case was not current, insofar as Boeing is concerned, at a time when much of the Board's information was originally obtained. Thus, the data cannot be said to have been equally available to Boeing. Cf. Hickman v. Taylor, 1947, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451; Universal Airline, Inc. v. Eastern Airlines, Inc., supra note 10. And if the information supplied by others or obtained by Board agents reflects a particular concern of the Board, it has not been demonstrated that disclosure of such information would interfere with the Board's decision-making function, or would affect an interest of

---

8. See Bank Line, Ltd. v. United States, D.C.S.D.N.Y.1948, 76 F.Supp. 801, 804 and notes 8 and 9 (collecting authority); Carrow, Governmental Nondisclosure in Judicial Proceedings, 107 U.Pa.L.Rev. 166, 181–188 (1958).

9. See National Labor Relations Board v. Botany Worsted Mills, 3 Cir., 1939, 106 F.2d 263, 267; Kaiser Aluminum & Chemical Corp. v. United States, 1958, 157 F.Supp. 939, 141 Ct.Cl. 38; Zacher v. United States, 8 Cir., 1955, 227 F.2d 219, certiorari denied, 1956, 350 U.S. 993, 76 S.Ct. 542, 100 L.Ed. 858.

10. See Vogel v. Gruaz, 1884, 110 U.S. 311, 4 S.Ct. 12, 28 L.Ed. 158; In re Quarles and Butler, 1895, 158 U.S. 532, 15 S.Ct. 959, 39 L.Ed. 1080; Universal Airline, Inc. v. Eastern Air Lines, Inc., 1951, 88 U.S.App.D.C. 219, 188 F.2d 993; United States v. Deere & Co., D.C.D. Minn.1949, 9 F.R.D. 523.

the Board similar to that of an adversary attorney. Cf. Hickman v. Taylor, supra.

We do not mean to suggest, however, that Government documents can easily be separated into fact finding and decision making categories, or that a clear distinction exists between persons acting in concert with the Board and outsiders. The papers in question are not, of course, before us. In fact, we have not even been apprised of the number of papers involved. We are in no position to offer exact guidance to the District Judge and to the parties. Initially, the party under subpoena must decide which papers or portions thereof he will claim to be privileged. In the present case, where no military or state secrets are involved, and where the generally meritorious basis of the subpoena—including necessity—has been established, we think it proper for the District Judge to examine *in camera* the individual papers which are alleged to be privileged, and direct exclusions or excisions in a manner deemed lawful and appropriate, keeping in mind the issues of the case, the nature and importance of the interests supporting the claim of privilege, and the fundamental policy of free societies that justice is usually promoted by disclosure rather than secrecy. Cf. Palermo v. United States, 1959, 360 U.S. 343, 354–355, 79 S.Ct. 1217, 3 L.Ed. 2d 1287 (judicial examination of papers); Jencks v. United States, 1957, 353 U.S. 657, 670–671, 674–677, 77 S.Ct. 1007, 1 L.Ed.2d 1103.[11] See, also, Jencks Act § 3500(c), 71 Stat. 595 (1957), 18 U.S.C. § 3500(c) (1958) (preservation of record for judicial review).

An equally difficult problem is posed by the fact that cost, price, and performance data concerning other contractors may now be in the Renegotiation Board's file of the Boeing case. The secrecy imposed by statute on these documents does not provide immunity from subpoena duces tecum. Cf. Blair v. Oester-

lein Machine Co., supra; but cf. Walling v. Comet Carriers, Inc., D.C.S.D.N.Y. 1944, 3 F.R.D. 442. Nor would they have been privileged at common law. See VIII Wigmore, Evidence §§ 2285, 2286 (1940). Nevertheless, this data may involve substantial interests—both public and private—which deserve some protection. First, disclosure of information concerning the costs, charges, efficiency and products of competitors may present such opportunities for price fixing as to be inconsistent with the public interest in obtaining goods and services at the lowest reasonable price from the most satisfactory contractor. While this possibility seems remote where contracts are let through negotiation and are subject to renegotiation after performance, the potential danger is sufficiently great to warrant examination. Second, the Board's files may contain information on the production, sub-contracting, or other business practices of Boeing's competitors. To what extent such information would involve interests similar to trade secrets, subject to protection under Rule 30(b), we have no way of knowing. But justice requires that insofar as information relating to specific Boeing competitors is concerned, the District Court also conduct such further proceedings and take such action as may be appropriate under Rule 30(b) to protect the interests of third parties and the public, including examination of the documents by the District Court *in camera* and the opportunity for affected parties to intervene and present argument if the court finds that desirable. Cf. United States v. Reynolds, 1953, 345 U.S. 1, 10, 73 S.Ct. 528, 97 L.Ed. 727.

The orders below are reversed in part, affirmed in part and the case is remanded for further proceedings not inconsistent with this opinion.

So ordered.

---

11. These are, of course, criminal cases, in which the Government could not choose to indict and at the same time deprive the accused of evidence necessary for his defense. The present case is somewhat similar, in that the Government chose to make a claim against Boeing for excess profits, and Boeing is seeking in substance and effect to defend against that claim.