## OVERBEY v. UNITED STATES.
### E--496.

Court of Claims.
Nov. 3, 1930.

Robert Ash and Thomas J. Reilly, both of Washington, D. C., for plaintiffs.

Lislie A. Smith, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen. (Frederick W. Dewart, of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

WHALEY, Judge.

A brief statement of the facts of the case shows that John T. Overbey and Annette J. Overbey, husband and wife, were residents of the state of Texas in 1919, and the property herein referred to was community property under the laws of that state. They owned 613 shares of stock in the Wichita Valley Refining Company, a Texas corporation, which stock had cost them $42,283.39. On July 5, 1919, the plaintiffs sold and transferred that

stock to certain individuals for $122,600, payable 15 per cent. in cash and the balance in 17 equal monthly installments. The installments were evidenced by the promissory notes of the respective purchasers, bearing 6 per cent. interest. No collateral was given by the purchasers to secure the notes. During the year 1919 the plaintiffs received 35 per cent. of the total selling price. On August 6, 1919, all of the physical assets of the Wichita Valley Refining Company were sold and transferred to the Texhoma Oil & Refining Company, and on the same day the board of directors of the Wichita Valley Refining Company executed a consent to the corporate dissolution of that company, and on August 15, 1919, a certificate of dissolution of the company was filed with the secretary of state.

The plaintiffs filed their income-tax returns wherein they showed this transaction as an installment sale and returned as income for 1919 only the amount of cash received that year.

Commissioner of Internal Revenue Williams, on April 28, 1920, on the facts as they were stated to him by the interested parties, and his understanding of the law thereon, wrote to Congressman Parrish expressing the opinion that it was an installment sale and the stockholders were within their rights in reporting in their income-tax returns for 1919 only the income from the payments made during 1919. Mr. Williams was the commissioner until and including April 9, 1921. Mr. Millard F. West was acting commissioner from that date until May 27, 1921, when Mr. Blair became commissioner. Under date of May 13, 1921, while Acting Commissioner West was in charge, the Bureau of Internal Revenue, upon consideration of further facts in the case and a reconsideration of the law, held that this was not an installment sale and all of the profit on the sale was income from 1919. An additional tax was assessed against the plaintiffs, which was duly paid. Subsequently, on February 24, 1925, while Commissioner Blair was in charge, the Bureau of Internal Revenue affirmed this decision. Claims for refund were duly filed and rejected.

The plaintiffs contend this is a sale under the installment plan as provided in Regulations 45 (art. 42) of the Treasury Department.

Prior to the Revenue Act of 1926, § 212 (d), 26 USCA § 953(d), there was no expressed legislative authority for the installment sales method on which to compute incomes. Appeal of Blum's, Inc., 7 B. T. A. 737. Until then the only methods provided by the statutes were the cash receipts or disbursement basis and the accrual basis. The Commissioner of Internal Revenue in 1918, with the approval of the Secretary of the Treasury, in order to meet a third class of cases, issued Regulations 45, art. 42, which permitted returns to be made under certain conditions on a partial payment or installment basis. Regulations 45, art. 42, reads as follows:

"Sale of personal property on installment plan.—Dealers in personal property ordinarily sell either for cash or on the personal credit of the buyer or on the installment plan. Occasionally a fourth type of sale is met with, in which the buyer makes an initial payment of such a substantial nature (for example, a payment of more than 25 per cent) that the sale, though involving deferred payments, is not one on the installment plan. In sales on personal credit, and in the substantial payment type just mentioned, obligations of purchasers are to be regarded as the equivalent of cash, but a different rule applies to sales on the installment plan. Dealers in personal property who sell on the installment plan usually adopt one of four ways of protecting themselves in case of default: (a) Through an agreement that title is to remain in the seller until the buyer has completely performed his part of the transaction; (b) by a form of contract in which title is conveyed to the purchaser immediately, but subject to a lien for the unpaid portion of the purchase price; (c) by a present transfer of title to the purchaser, who at the same time executes a reconveyance in the form of a chattel mortgage to the seller; or (d) by conveyance to a trustee pending performance of the contract and subject to its provisions. * * *"

It is clear from the facts in the instant case that the plaintiffs do not bring themselves within the provisions of Regulations 45. Title did not remain in the seller until the final payment was made; no lien for the unpaid portion of the purchase price was given; and there was no conveyance to a trustee pending the performance of the contract. If the plaintiffs are to recover, they must come under section 212(d) of the Revenue Act of 1926, which is made to retroactively apply, in computing income, to the Revenue Act of 1918 (40 Stat. 1057). Section 212(d) and section 1208 of the Revenue Act of 1926, 26 USCA §§ 953(d), 953a, read as follows:

"Sec. 212. * * * (d) Under regulations prescribed by the Commissioner with the approval of the Secretary, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the total profit realized or to be realized when the payment is completed, bears to the total contract price. In the case (1) of a casual sale or other casual disposition of personal property for a price exceeding $1,000, or (2) of a sale or other disposition of real property, if in either case the initial payments do not exceed one-fourth of the purchase price, the income may, under regulations prescribed by the Commissioner with the approval of the Secretary, be returned on the basis and in the manner above prescribed in this subdivision. As used in this subdivision the term 'initial payments' means the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable period in which the sale or other disposition is made."

"Installment Sales.

"Sec. 1208. The provisions of subdivision (d) of section 212 shall be retroactively applied in computing income under the provisions of the Revenue Act of 1916, the Revenue Act of 1917, the Revenue Act of 1918, the Revenue Act of 1921, or the Revenue Act of 1924, or any of such Acts as amended. Any tax that has been paid under such Acts prior to the enactment of this Act, if in excess of the tax imposed by such Acts as retroactively modified by this section, shall, subject to the statutory period of limitations properly applicable thereto, be credited or refunded to the taxpayer as provided in section 284."

■ The plaintiffs do not bring themselves under the provisions of section 212(d), as it is admitted the purchase price was more than a thousand dollars, and more than 25 per cent. (i. e. 35 per cent.) of the consideration was paid in the taxable period.

■ If, however, they are not strictly within the provisions of the statute, the plaintiffs contend the letter from Commissioner Williams, defining the transaction as a sale on the installment basis, is binding on his successors in office and cannot be disturbed. The facts show Commissioner Williams had no claim before him when he wrote his letter to Congressman Parrish with the statement of what were supposed to be the correct and true facts. His letter was advisory and based on a supposititious case. Income-tax returns of the plaintiffs had been filed but not audited. As a matter of fact, the facts presented to Commissioner Williams did not correspond to the real facts of the transaction, as afterwards disclosed upon investigation by Commissioner Blair. Certain essential facts were erroneously stated to Commissioner Williams. The stock sold was never held by a trustee as security for the payment of the notes; the title to the physical assets of the company did not remain vested in the corporation through the trustee for the benefit of the stockholders making the sale, until the last installment was paid; all of the assets of the Wichita Valley Refining Company were conveyed to the Texhoma Oil and Refining Company and the former corporation surrendered its charter before the first installment fell due. However, it makes no material difference whether Commissioner Blair believed his predecessor's ruling to be erroneous in law or fact; the commissioner had the authority to examine the returns and determine the tax. Even though the returns had been examined, in the absence of a binding settlement, the commissioner had the authority to reexamine and redetermine the tax liability of the plaintiffs. Sweets Co. of America, Inc., v. Commissioner of Internal Revenue (C. C. A.) 40 F.(2d) 436 and cases cited. McIlhenny v. Commissioner of Internal Revenue (C. C. A.) 39 F.(2d) 356, Appeal of Yokohama Ki-Ito Kwaisha, Ltd., 5 B. T. A. 1248; James Couzens v. Com'r of Internal Revenue, 11 B. T. A. 1040; Appeal of Younker Bros., Inc., 8 B. T. A. 333.

The petition is dismissed. It is so ordered.