The **LESAVOY FOUNDATION,**
Petitioner,

v.

**COMMISSIONER OF INTERNAL
REVENUE,** Respondent.
No. 11881.

United States Court of Appeals
Third Circuit.

Argued Sept. 24, 1956.

Decided Nov. 12, 1956.

Clendon H. Lee, New York City, O'Connor & Farber, New York City (William
F. Snyder, on the brief), for petitioner.

Marvin W. Weinstein, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, I Henry Kutz, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before BIGGS, Chief Judge, and GOODRICH and HASTIE, Circuit Judges.

GOODRICH, Circuit Judge.

This case raises the question of (1) the liability to taxation of a corporation organized for charitable, educational and philanthropic purposes,[1] which the Commissioner claims departed from its exempt purpose and was used in part as a means of furthering business enterprises in which the donor of the foundation of the charitable trust was interested and (2) the limits, if any, of the power of the Commissioner to make a revocation of an exemption retroactive.

■ The foundation on July 31, 1945, upon application was granted a certificate of exemption from taxation under the statute just referred to. Six years later, on December 19, 1951, the Commissioner revoked the certificate of exemption alleging the reason just mentioned and assessed a deficiency against the petitioner along with penalties. The revocation was made retroactive to 1946 during which year the foundation acquired Clover Spinning Mills, an enterprise which manufactured cotton yarn and cloth. This imposed a deficiency on the taxpayer for the years 1946 to 1948 and 1950. The taxpayer claims the resulting deficiency thus assessed will completely wipe out the assets of the foundation. This statement seems to be borne out by the last report we have for the year ending December 31, 1949, showing that the foundation had net assets of approxi-

mately $665,000. The total claim here is for $903,000 which includes a 25% failure to file penalty under § 291, 26 U.S.C.A. § 291 (now Int.Rev.Code of 1954, § 6651(a)) and a 5% negligence penalty under § 293(a), 26 U.S.C.A. § 293(a) (now Int.Rev.Code of 1954, § 6653(a)). This statement of fact does not constitute a reason by itself for refusing to back up the Commissioner's tax claim, if the taxpayer owes that much. But charitable enterprises continue to be met with legislative favor and the facts here show that there was nothing improper about the way the taxpayer distributed its money. Therefore, we look twice before we say that a Commissioner's retroactive ruling is to be permitted to wipe it out.

The Commissioner invites us to reconsider and overrule our decision in C. F. Mueller Co. v. Commissioner, 3 Cir., 1951, 190 F.2d 120. This we do not propose to do. The case was decided after careful consideration and followed the pattern already set in the Second Circuit. We abide by it.

Nor do we find it necessary to decide the interesting question posed in support of the Commissioner's ruling. That question involves the taxable status when the charitable enterprise is used in part to assist a profit-making enterprise of the foundation's donor although all the income accruing to the foundation is devoted to admittedly charitable purposes.[2] All of this, of course, is now ancient history as tax laws go, since such "feeder organizations" have been taxable since 1951.[3] The evidence shows that the mill owned by the foundation sold yarn to the donor's enterprises at regular market prices. The most claimed is that the foundation insured the donor's enterpris-

1. Int.Rev.Code of 1939, § 101(6), 26 U. S.C.A. § 101(6) (now Int.Rev.Code of 1954, § 501(c) (3)) exempts organizations for "religious, charitable, scientific, literary, or educational purposes."

2. An analogy is suggested by Better Business Bureau of Washington v. United States, 1945, 326 U.S. 279, 66 S.Ct. 112,

90 L.Ed. 67, and United States v. La Societe Francaise, etc., 9 Cir., 1945, 152 F.2d 243, certiorari denied 1946, 327 U.S. 793, 66 S.Ct. 820, 90 L.Ed. 1020.

3. Int.Rev.Code of 1939, § 101(12) (next to last par.), 26 U.S.C.A., § 101(12), added by 64 Stat. 953 (1950) (now Int.Rev. Code of 1954, § 502).

es a source of supply when yarn was hard to come by. If it is to be held that such a use is sufficient to remove the taxpayer from the exemption, which we do not now decide, then the further question is presented: Is the evidence sufficient to sustain the conclusion that such a use was made?

■ The reason we do not need to go into the questions just stated is that we think the Commissioner went beyond his authority in revoking the certificate of exemption retroactively. We quite realize that the Commissioner may change his mind when he believes he has made a mistake in a matter of fact or law. Our own decision in Keystone Automobile Club v. Commissioner, 3 Cir., 1950, 181 F.2d 402 recognizes this point fully and that point is sustained by abundant authority. But it is quite a different matter to say that having once changed his mind the Commissioner may arbitrarily and without limit have the effect of that change go back over previous years during which the taxpayer operated under the previous ruling.

■ Although there is ample authority that the Commissioner may change retroactively a ruling of general application,[4] there is a dearth of cases involving individualized taxpayer's rulings.

This is so because the Commissioner has almost invariably followed a policy of honoring his rulings and making changes prospective only, since the much criticized case of James Couzens, 1928, 11 B.T.A. 1040, (Contra, Woodworth v. Kales, 6 Cir., 1928, 26 F.2d 178.[5] Indeed, this policy has been codified by one of the Commissioner's own rulings.[6]

The few authorities that there are concerning individualized rulings are not unanimous. The point has had the most attention in the Sixth Circuit. The latest decision of that Court in Automobile Club of Michigan v. Commissioner, 6 Cir., 1956, 230 F.2d 585, certiorari granted, 352 U.S. 817, 77 S.Ct. 32, discusses previous rulings and comes out with elaborate opinions both supporting and against the Commissioner's action. The result of that case, another one concerning an automobile club, was to permit a two-year retroactive effect to a revocation of the certificate under which the club was exempt as a social club. Note, however, that the majority found, 230 F.2d at pages 588 and 590, that the ruling was not arbitrary or oppressive since the retroactive effect was limited to two years though it could have been extended back eleven, and there was no element of estoppel since the taxpayer did not assert that it acted in reliance on the

---

4. The general problem of when a general regulation may be revoked retroactively is discussed in Griswold, A Summary of the Regulations Problem, 54 Harv.L.Rev. 398 (1941).

5. In Wenchel, Taxpayers' Rulings, 5 Tax L.Rev. 105, 113, 114 (1949), the author, a former Chief Counsel of the Bureau of Internal Revenue, states that there had not been one failure to honor a taxpayer's ruling in the decade preceding the article. In such cases as Overbey v. United States, 1930, 44 F.2d 268, 70 Ct. Cl. 629 and Southern Maryland Agricultural Fair Association, 1939, 40 B.T.A. 549, the rulings were not based on a full factual disclosure and therefore were not binding. In cases like Arthur H. Lamborn, 1928, 13 B.T.A. 177, the Commissioner did not repudiate his rulings; they were based on a hypothetical case which did not correspond to the actual facts.

6. Rev.Rul. 54–146, 1954–1 Cum.Bull. 88, 91 provides:

"It is the general policy of the Internal Revenue Service to limit the revocation of a ruling with respect to an organization previously held to qualify under section 101 to a prospective application only, if the organization has acted in good faith in reliance upon the ruling issued to it and a retroactive revocation of such ruling would be to its detriment. Any ruling issued as to the exempt status of an organization will not be considered controlling where there has been a misstatement or omission of a material fact or where the operations of the organization are conducted in a manner materially different from that represented. A revocation may be effected by a notice to the organization or by a ruling or other statement published in the Internal Revenue Bulletin applicable to the type of organization involved. * * * *"

certificate. On the other hand, there is respectable authority that the Commissioner may not retroactively change an individualized taxpayer's ruling, unless the taxpayer is himself estopped from relying on the ruling in good faith because he has concealed the facts, or because of some other fraud or misrepresentation.[7]

■ We, therefore, turn our attention to the question of whether this taxpayer has done anything to estop itself from relying on the certificate. In arguing that it has, the government urges that the taxpayer was not frank in the manner in which it filled out its 1946 information return. The income tax form asks: "Have you any sources of income or engaged in any activities which have not previously been reported to the Bureau? If so, attach detailed statement." Taxpayer answered, "Yes" in the blank provided after the question. In the margin directly under the question was typed, "Purchased Clover Spinning Mills Co., Clover, So. Carolina, March 18, 1946." A balance sheet attached to the 1946 return listed such assets as mill buildings, machinery and equipment, accounts receivable and under inventory listed cotton, work in progress, finished yarn and manufacturing supplies. Under liabilities were items for accounts payable and payroll. Another question on the form asked for gross receipts from business activities and the taxpayer reported substantial sales of yarn and cloth. Taken as a whole, we think that the return fully and fairly disclosed that taxpayer was engaged in an active textile spinning enterprise. We see nothing more that the form called for. The taxpayer did not misstate anything it told the Commissioner, nor did it omit to disclose anything it should have told him. In fact, a schedule attached to the 1946 return indicated a close connection between the foundation and other textile enterprises by listing as contributors Fabrics Corporation of America, Rayon Corporation of America and two other businesses which contained "Mills" as part of their names.

The taxpayer fully disclosed the information required by the informational return. The original exemption certificate imposed upon the foundation a duty to

7. In Stockstrom v. Commissioner, 1951, 88 U.S.App.D.C. 286, 190 F.2d 283, the Commissioner informed taxpayer on several occasions that no tax was due and taxpayer did not file a return in reliance on this assurance. At a time when the statute of limitations would have barred a deficiency if the return had been filed, it was held that the Commissioner was estopped from assessing the deficiency.

Smale & Robinson, Inc. v. United States, D.C.S.D.Cal.1954, 123 F.Supp. 457, held that the Commissioner is equitably estopped from contesting the form of a taxpayer's refund claim if such form is approved by an authorized agent. Cf. Ritter v. United States, 3 Cir., 1928, 28 F.2d 265, 267 (dictum).

In H. S. D. Co. v. Kavanagh, 6 Cir., 1951, 191 F.2d 831, it was held that the Commissioner could not withdraw retroactively a ruling based on full knowledge of the facts that taxpayer was entitled to deduct contributions to its employees trust fund. Although the Code specifically authorized such rulings, Int.Rev.Code of 1939, § 165(a) (3) (B), 26 U.S.C.A. § 165(a) (3) (B), (now Int.Rev.Code of 1954, § 401(a) (3) (B)) the ruling involved in the instant case was likewise authorized. See U.S.Treas.Reg. 118, § 39.101–1.

In Woodworth v. Kales, 6 Cir., 1928, 26 F.2d 178, the Commissioner was held to lack power to assess a deficiency based on a revaluation of stock unless the original evaluation was based on fraud or mistake or unless the new one was based on newly discovered evidence. Cf. Boyne City Lumber Co. v. Doyle, D.C.W.D. Mich.1930, 47 F.2d 772.

The Sixth Circuit, which had decided the H. S. D. Co. and Woodworth cases, supra, attempted to distinguish them in the Automobile Club of Michigan case, 230 F.2d at page 589, but we find the distinction doubtful.

See also, Atlas, The Doctrine of Estoppel in Tax Cases, 3 Tax L.Rev. 71 (1947); Note, The Emerging Concept of Tax Estoppel, 40 Va.L.Rev. 313 (1954). But see La Societe Francaise, etc., 9 Cir., 1945, 152 F.2d 243, certiorari denied 1946, 327 U.S. 793, 66 S.Ct. 820, 90 L.Ed. 1020.

inform the Commissioner of any relevant changes in the facts and, as already stated, taxpayer gave the information. The taxpayer did not bring to the Commissioner's attention the fact that Clover sold yarn to the donor's mills. We do not find this fact any evidence of lack of frankness for the information would have been irrelevant at the time the return was made. The Commissioner's theory is a debatable one at best even today and some of the cases he relies on most heavily were not decided until the end of the taxable years involved. *E.g.*, C. F. Mueller Co. v. Commissioner, 3 Cir., 1951, 190 F.2d 120; United States v. Community Services, Inc., 4 Cir., 1951, 189 F.2d 421, certiorari denied 1952, 342 U.S. 932, 72 S.Ct. 375, 96 L.Ed. 694; Universal Oil Products Co. v. Campbell, 7 Cir., 181 F.2d 451, certiorari denied 1950, 340 U.S. 850, 71 S.Ct. 78, 95 L.Ed. 623; but cf. Better Business Bureau of Washington, D. C., Inc. v. United States, 1945, 326 U.S. 279, 66 S.Ct. 112, 90 L.Ed. 67.

The statutory section on retroactivity is found in section 3791(b) of the 1939 Code, 26 U.S.C.A. § 3791(b) (now Int.Rev.Code of 1954, § 7805(b)). The section reads as follows:

> "Retroactivity of regulations or rulings. The Secretary, or the Commissioner with the approval of the Secretary, may prescribe the extent, if any, to which any ruling, regulation, or Treasury Decision, relating to the internal revenue laws, shall be applied without retroactive effect." [8]

As the Sixth Circuit points out, the provision gives the Commissioner discretionary power to determine the extent of retroactivity in a given case. The usual rule in such case is that an official vested with discretionary power is not to be interfered with unless it can be found that his action in a given case goes beyond the bounds of discretion.[9] We think that usual rule should be applicable here.

---

8. Compare Int.Rev.Code of 1939, § 3813, 26 U.S.C.A. § 3813, added by 64 Stat. 957 (1950), (now Int.Rev.Code of 1954, § 504) which applied generally to organizations exempt under § 101(6) with exceptions not here relevant. Subsection (b) describes certain prohibited transactions which generally include using the exempt organization to advance the business purposes of its creator. Subsection (b) (3) prohibits an exempt organization from making "any part of its services available on a preferential basis." Subsection (c) (1) provides that if a prohibited transaction is engaged in after July 1, 1950, the organization loses its exemption. Subsection (c) (2) provides:

   "(2) Taxable years affected. An organization shall be denied exemption from taxation under section 101(6) by reason of paragraph (1) *only for taxable years subsequent to taxable year during which it is notified by the Secretary that it has engaged in a prohibited transaction,* unless such organization entered into such prohibited transaction with the purpose of diverting corpus or income of the organization from its exempt purposes, and such transaction involved a substantial part of the corpus or income of such organization." (Emphasis supplied.)

The section is not by its terms applicable since the alleged offending transactions were before July 1, 1950. However, it is persuasive analogy against allowing a retroactive revocation of an exemption. Taken as to whole, § 3813 seems to indicate a Congressional intent to allow taxpayers to rely on a certificate of exemption under § 101(6) until revoked prospectively unless the prohibited transaction was entered into for the specific purpose of diverting the organization's funds, which was not the case here. Note that even if the subsection (b) puts the taxpayer on clear notice that he is engaged in a prohibited transaction, and thus is not entitled to exempion, he is still treated as exempt until notified by the Secretary.

9. Niagara Hudson Power Corp. v. Leventritt, 1951, 340 U.S. 336, 347, 71 S.Ct. 341, 95 L.Ed. 319; United States ex rel. Adamantides v. Neelly, 7 Cir., 1951, 191 F.2d 997, 1000; Valley Mould & Iron Corp. v. N. L. R. B., 7 Cir., 1940, 116 F. 2d 760, 764, certiorari denied 1941, 313 U.S. 590, 61 S.Ct. 1114, 85 L.Ed. 1545; Marlin-Rockwell Corp. v. N. L. R. B., 2 Cir., 116 F.2d 586, 587, 588, certiorari denied 1941, 313 U.S. 594, 61 S.Ct. 1116, 85 L.Ed. 1548.

We think further that the bounds of permissible discretion were exceeded when the Commissioner changed his mind as to the exemption to be granted this foundation and made it liable for a tax bill so large as to wipe it out of existence. As already indicated the people in charge of it committed no fraud and made no misstatement. Whether there was any basis for holding that it departed from the facts which would entitle it to a charitable exemption is at least an arguable question of law. We, therefore, see no grounds for sustaining such a harsh result as the ruling of the Commissioner, if enforced, would involve.

The judgment of the Tax Court will be reversed.