John L. PIERSON, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 75–218.

United States District Court, D. Delaware.

Feb. 9, 1977.

Charles S. Crompton, Jr., of Potter, Anderson & Corroon, Wilmington, Del., for plaintiff; Stephen D. Gardner, James S. Eustice, Max Folkenflik, of Kronish, Lieb, Shainswit, Weiner & Hellman, New York City, of counsel.

W. Laird Stabler, Jr., U. S. Atty., Dept. of Justice, Wilmington, Del., John J. McCarthy, and D. Patrick Mullarkey, Dept. of Justice, Washington, D.C., for defendant.

MURRAY M. SCHWARTZ, District Judge.

This case arises out of the retroactive revocation by the Commissioner of Internal Revenue ("Commissioner") of two private letter rulings issued previously to Hartford Fire Insurance Company ("Hartford") in connection with a corporate acquisition of Hartford by International Telephone and Telegraph Corporation ("ITT").[1] Plaintiff has filed a Motion to Compel seeking the production of 287 documents currently in the defendant's possession, as well as an order requiring answers or more complete answers to 36 interrogatories propounded by plaintiff to defendant. The defendant has objected to this discovery on the basis of relevance and various interpersonal and government privileges.

*Factual Background*

No attempt will be made here to describe in detail the events leading up to the initiation of this litigation. For purposes of the instant motion, a brief summary of those events will suffice.

Prior to April of 1969, ITT had acquired approximately eight percent of the Hartford stock outstanding for cash. After negotiations between Hartford and ITT, it was agreed that ITT would acquire control of Hartford through an exchange of stock by Hartford shareholders for ITT stock. A crucial condition of this acquisition was that it qualify as a tax-free reorganization under 26 U.S.C. § 368(a)(1)(B).[2] In response to a ruling request by Hartford, the Internal Revenue Service ("Service") issued a ruling letter on October 13, 1969, stating that the proposed reorganization between ITT and Hartford would qualify under Section 368(a)(1)(B) provided that prior to the Hartford shareholder vote on the proposed

---

1. For other opinions concerning this case and another related case, see *Pierson v. United States,* 71 F.R.D. 75 (D.Del.1976); *Int'l Tel. & Tel. Corp. v. Alexander,* 396 F.Supp. 1150 (D.Del.1975).

2. All references to Sections are to Sections of the Internal Revenue Code of 1954, 26 U.S.C., as amended, unless otherwise indicated.

merger, ITT had unconditionally disposed of the Hartford shares it had purchased to third parties.

On October 14, 1969, ITT submitted an application for a supplemental ruling that a proposed transaction between it and Mediobanca S.p.A. ("Mediobanca") would constitute an unconditional disposition of the Hartford stock as required by the earlier Service letter ruling. A draft copy of the proposed contract with Mediobanca accompanied the supplemental ruling request. On October 21, 1969, the Service issued a supplemental ruling letter which stated that the proposed sale by ITT of its Hartford shares to Mediobanca, as described in the contract, would constitute an unconditional disposition of stock as required by the earlier letter ruling. The contract between ITT and Mediobanca was executed on November 3, 1969.

Because of difficulties in obtaining the Connecticut Insurance Commissioner's approval of the merger, ITT eventually obtained control of Hartford through a direct tender offer to the Hartford shareholders.[3] In May, 1970, ITT offered to exchange ITT voting stock for Hartford shares. Over 90 percent of the outstanding Hartford shares were tendered, including those held by Mediobanca. The plaintiff in this case also tendered his shares to ITT and did not recognize any gain on the transaction on his 1970 Federal income tax return.

In March, 1974, after an investigation into the facts and circumstances surrounding the request for and issuance of the October, 1969 rulings, the Service revoked retroactively the 1969 letter rulings and

ruled that the plaintiff and other Hartford shareholders had participated in a taxable exchange when the Hartford shares were tendered for ITT shares. Plaintiff then filed an amended federal income tax return for the year ending December 30, 1970 and paid additional taxes in the amount of $3,682. This amount reflects the taxes owed when his exchange of Hartford shares for ITT shares is treated as a taxable transaction.

Plaintiff on June 25, 1974, filed a timely claim for refund with the Service. After the Service failed to give notice of disallowance of the refund claim, plaintiff filed suit in this Court pursuant to 28 U.S.C. § 1346(a)(1).

### Scope of Review—Applicability of the APA

■ Since the touchstone of any discovery motion is relevance, the primary issue for decision is whether the documents and information sought relate to any of the legal or factual issues in dispute.[4] The plaintiff asserts two theories to substantiate his claim for a tax refund. First, he alleges that as a matter of law the exchange of Hartford shares for ITT shares constituted a tax-free reorganization under Section 368(a)(1)(B). Second, he contends that the Commissioner abused his discretion under Section 7805(b) by applying retroactively the revocation of the 1969 letter rulings. Accordingly, even if the transaction did not qualify as a tax-free exchange, the ruling revocation can be given only prospective effect.

Although both theories concern a single tax refund claim, it is important to distin-

---

3. The parties are in full agreement that accomplishment of the ITT-Hartford reorganization by tender offer rather than merger has no effect on the merits of the instant litigation.

4. Fed.R.Civ.P. 26(b)(1) provides:

"(b) Scope of Discovery. Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:

(1) In General. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it re-

lates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."

guish the two theories for there is a different standard of review applicable to each. Moreover, because of the different standards, materials relevant to the Court's consideration of one theory may not be, and indeed probably will not be, relevant to consideration of the other theory. Therefore, attention will be given first to the appropriate standard to be applied and to the proper focus of the Court's review under each theory. *See A. O. Smith v. F.T.C.,* 403 F.Supp. 1000, 1003 (D.Del.1975).

■ As to the first theory of recovery, there is little dispute about the proper standard of review. The parties agree that the Commissioner's determination to revoke the 1969 letter rulings and to treat the exchange as taxable is subject to *de novo* review by the Court. *See Lewis v. Reynolds,* 284 U.S. 281, 283, 52 S.Ct. 145, 76 L.Ed. 293 (1932). That is to say, the Court must place itself in the shoes of the Commissioner and decide whether the transaction qualifies under Section 368(a)(1)(B). The kinds of materials on which the Court's review should focus are discussed in more detail *infra* in the section concerning relevance. Suffice it to say at this point that the focus of the Court's review on plaintiff's first theory is not the reasons for the revocation. For the purpose of the review is to determine whether the Commissioner was correct in concluding that the transaction was taxable and, consequently, was correct in assessing a tax deficiency.

As to the plaintiff's second theory of recovery, involving the retroactive effect given to the revocation of the 1969 letter rulings, the parties have suggested quite different approaches for the Court to take. The plaintiff argues that administrative action taken pursuant to Section 7805(b) is subject to review under the Administrative Procedure Act (APA) for abuse of discretion. *See* 5 U.S.C. § 701 *et seq.* Under this approach, the focus of judicial review is on the factors considered by the Commissioner in making his decision.

■ The defendant, by contrast, contends that the APA does not apply and that the test to be applied is whether the result of the retroactive application constituted an abuse of discretion. *See Lesavoy Foundation v. Commissioner,* 238 F.2d 589 (3d Cir. 1956).[5] Under this approach, the Court is asked to consider any evidence relevant to determining whether the result constituted an abuse of discretion, including evidence not considered by or available to the Commissioner.[6] Defendant argues the focus of review is on evidence tending to show or not show that the result of the decision was an abuse of discretion. The Court agrees with the parties that the proper standard of review is abuse of discretion,[7] but cannot subscribe fully to the approach of either side.

The defendant's theory is novel, but unconvincing. The cases cited to support its adoption neither discuss the approach suggested here nor mention that material presented to the Court had not been considered by the Commissioner. *See, e. g., Stevens Bros. Foundation, Inc. v. Commissioner,* 324 F.2d 633 (8th Cir. 1963); *Lesavoy Foundation v. Commissioner,* 238 F.2d 589 (3d Cir. 1956). Further, the defendant

---

**5.** The *Lesavoy* opinion does not use the words "abuse of discretion" to describe the standard of review. *Lesavoy Foundation v. Commissioner,* 238 F.2d 589, 593 (3d Cir. 1956). The Court believes, however, that the intent of the opinion was to apply an abuse of discretion standard. To the extent, if any, that *Lesavoy* did not apply the standard of abuse of discretion, it is overruled by *Automobile Club v. Commissioner,* 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746 (1956).

**6.** The defendant has termed this review "*de novo.*" Since this term is often used in other contexts, including plaintiff's first theory, to mean that the Court exercises its own independent determination and is not limited to reviewing for abuse of discretion, it is felt that confusion can be avoided by describing at greater length the process the defendant's theory envisions. Neither side has suggested that traditional "*de novo*" review is appropriate in ruling on a retroactive revocation and the Court agrees that such review is not proper.

**7.** *See Automobile Club v. Commissioner, supra.*

has not referred to any authority which approves this confusing hybrid procedure.

■ At bottom, the defendant seeks to characterize review of a Section 7805(b) decision as equivalent to review of an ordinary assessment of a tax deficiency.[8] The problem with this procrustean analysis is that the standard of review for the former is far narrower than for the latter. *See Revell, Inc. v. Riddell,* 273 F.2d 649, 659 (9th Cir. 1960). In an ordinary refund action, the Court is permitted to place itself in the shoes of the Commissioner. *See id.* But, where as here the basis of the refund action is in part a revocation ruling given retroactive effect, and one focal point of the Court's inquiry is on whether the Commissioner abused his discretion under Section 7805(b), the Court may not substitute its judgment for the Commissioner. *See Lesavoy Foundation, Inc. v. Commissioner, supra* at 593.[9] Accordingly, defendant's analysis is incorrect.

■ The close parallel between review of Section 7805(b) determinations and review of administrative actions by agencies subject to the APA leads the plaintiff to conclude that the APA also regulates review under Section 7805(b). On its face, the APA would arguably appear to apply.[10] There is no statute precluding judicial review [11] and retroactive revocations are not within that narrow category of agency action committed to agency discretion. *See* 5 U.S.C. § 701(a).[12] Further, the Service is not listed among the agencies excluded from Chapter 7 of Title 5. Nevertheless, despite thorough review of numerous decisions involving retroactive revocation, the Court and the parties have been unable to find any decision holding that the APA does regulate the scope of review; [13] apparently no one heretofore has thought to raise the issue.

A close analysis of the issue at stake in this case, however, convinces the Court that deciding the applicability of the APA is unnecessary. The essence of the plaintiff's abuse of discretion claim is that there was no material omission or misstatement of facts in the original ruling request and that the transaction as consummated did not differ materially from the facts upon which

8. At argument held on plaintiff's motion, Mr. Mullarkey, counsel for the defendant, stated: "What applies [to review of Section 7805(b) retroactive applications] is the same rule that applies in every other litigation by a taxpayer contesting a tax deficiency. And that is, on the facts before the Court, is it apparent that the result of the Commissioner's decision was such that his discretion was not properly exercised?" Tr. 49.

9. The importance of the distinction between the plaintiff's two causes of action is discussed more fully *infra.*

10. Section 702 of the Administrative Procedure Act provides:
§ 702. Right of review.
A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.

11. The defendant contends that 28 U.S.C. § 1346 is a statute precluding judicial review within the meaning of 5 U.S.C. § 701(a)(1). In *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 411, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), the Court required a showing of "clear and convincing evidence" of Congress' intent to preclude judicial review. *See Abbott Laboratories v. Gardner,* 387 U.S. 136, 141, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). Section 1346 does not provide such evidence, for it only provides an independent basis for this Court's jurisdiction. It does not say that the APA does not regulate the standard and scope of review.

12. "Committed to agency discretion" is a term of art found in the APA and is "applicable in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402 at 410, 91 S.Ct. 814, 821, 28 L.Ed.2d 136 (1971), *quoting* S.Rep.No. 752, 79th Cong., 1st Sess., 26 (1945).

13. The Court did locate one case holding that the Service was exempt from Sections 5, 7 and 8 of the APA. *O'Dwyer v. Commissioner,* 266 F.2d 575, 580 (4th Cir. 1959). But that court cites for authority two cases which held the APA inapplicable to Tax Court procedure but said nothing about the Service. *Cohen v. Commissioner,* 176 F.2d 394 (10th Cir. 1949); *Kennedy Name Plate Co. v. Commissioner,* 170 F.2d 196 (9th Cir. 1948). Moreover, the *O'Dwyer* case involved review of a deficiency without a retroactive revocation.

the 1969 rulings were based. *See* 26 C.F.R. § 601.201(1)(5) (1976). The defendant claims that facts were omitted and misstated in the 1969 ruling requests and that the transaction as consummated differed materially from the facts upon which the rulings were based. *See* Technical Advice Memorandum at 107.[14] The defendant further contends that even if there were no material irregularities, the retroactive revocation is proper because the Statement of Procedural Rules contained in Title 26 of the Code of Federal Regulations is directory, not mandatory. *See Smith v. United States*, 478 F.2d 398, 400 (5th Cir. 1973). Without indicating in any way its opinion of the merits of these positions, the Court is convinced that the judicial review standard of abuse of discretion will require a thorough review of the record relied upon by the Commissioner in deciding to apply the revocation retroactively.[15] Accordingly, it makes little, if any, difference if the source of authority for judicial review is the APA or cases such as *Automobile Club v. Commissioner*, 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746 (1956); the course the Court must follow is the same.[16] Even if the APA were held inapplicable, the Court, in dealing with the complex issues presented by this case, would still look for guidance to cases reviewing agency action under the APA for abuse of discretion.

Since determination of the applicability of the APA is not essential to the disposition of plaintiff's discovery motion and has potentially far-reaching consequences for other aspects of Service procedure which understandably have not been fully briefed or argued by the parties, it is concluded that the issue need not be resolved at this time.

*Relevance*

The rules of discovery under the Federal Rules of Civil Procedure are designed to provide parties with access to the fullest possible knowledge of the issues and facts prior to trial.[17] The single initial hurdle which must be cleared by the party seeking discovery is to demonstrate the relevance of the information sought to the issues involved in the case.[18] Relevant material subsequently may be protected from discovery by proper claims of privilege, but the initial question is relevance. *See A. O. Smith v. F. T. C.*, 403 F.Supp. 1000, 1004 (D.Del.1975).

The defendant has objected on the basis of relevance to the production of virtually every document sought by the plaintiff. The defendant contends that "in any tax case . . . once the Commissioner has made his determination that taxes are owed and issues a notice of deficiency to a taxpayer, the Court . . . must determine the correct tax liability . . . in a trial *de novo*." (Defendant's Brief at 19). With respect to the question of whether the actions of ITT in 1969 and 1970 constituted a taxable exchange under 26 U.S.C. § 368(a)(1)(B), I agree. *See Revell, Inc. v. Riddell, supra*. As to that issue in this case, the Court must apply the law to a set of facts and reach its own conclusion on the taxability of the transaction between ITT and Hartford shareholders. The reasons for the Commissioner's determination are not relevant for the Court does not review those reasons. Instead, the review centers upon whether the ITT-Hartford transaction was a taxable event. The parties concur that much of what is sought under this motion is not relevant to this theory of recovery. Since it is difficult for the Court

---

**14.** Submitted by plaintiff as an exhibit to affidavits in support of his motion to compel discovery.

**15.** *See* pp. 389–390 *infra*.

**16.** "[T]he Commissioner's exercise of discretion [under Section 7805(b)] is reviewable (in a proper proceeding) for abuse, in the same way as other discretionary administrative determinations. The Internal Revenue Service does

not have *carte blanche*. Its choice must be a rational one, supported by relevant considerations." *International Business Machines v. United States*, 343 F.2d 914, 920, 170 Ct.Cl. 357 (1969).

**17.** *Hickman v. Taylor*, 329 U.S. 495, 500, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

**18.** *See* n.4 *supra*.

to separate the documents asserted to be relevant under plaintiff's first theory from those alleged to be relevant under the second, plaintiff will be ordered to provide the Court with an itemized list of the documents he contends are relevant to the first theory accompanied by a statement of the relevance of each.

■■■ A quite different question is presented by review of the Commissioner's decision under Section 7805(b) to revoke the 1969 rulings retroactively. Having decided to revoke a private letter ruling, the Commissioner may apply the revocation prospectively or retroactively. Such a decision involves the exercise of legislatively delegated discretion and, as noted above, much more closely resembles a decision rendered by an agency head reviewable under the APA. Both Section 7805(b) decisions and many APA decisions are reviewable for abuse of discretion. *Compare Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971) and *Automobile Club v. Commissioner, supra*, 353 U.S. at 185, 77 S.Ct. 707.

In reviewing for abuse of discretion, the Court does not place itself in the shoes of the Commissioner and consider the matter *de novo. Cf. Citizens to Preserve Overton Park v. Volpe, supra*, 401 U.S. at 416, 91 S.Ct. 814. Rather, as the Supreme Court noted in a recent APA case, the Court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Id.* Action by the Commissioner under Section 7805(b) differs substantively and procedurally from the ordinary assessment of a tax deficiency described in *Revell, Inc. v. Riddell, supra.* The court in *Revell* was speaking to the common situation in which a transaction is consummated without seeking a ruling from the Service and the Commissioner later determines that the transaction was taxable. *See Revell, Inc. v. Riddell, supra*, 273 F.2d at 651. In the instant case, the taxpayer through Hartford received a prior ruling from the Service and in reliance upon it exchanged his stock. Therefore, the Commissioner first had to decide to revoke the prior ruling and then decide to apply it retroactively, i. e. to assess a deficiency.

■■ This Court fully agrees with the analysis of Judge Tutberg in *Revell*, distinguishing administrative and tax deficiency cases, and finds it applicable to the plaintiff's first theory in this case, that the exchange of Hartford for ITT stock was not a taxable transaction. As to this theory, factual material in the possession of the defendant may be relevant, but recommendations and analysis by the defendant are not. *Revell*, however, does not govern the plaintiff's abuse of discretion contention and thus the Court must look elsewhere to determine relevance.

For reasons noted earlier, it is unnecessary at this point for the Court to decide whether the APA applies to this proceeding. It is appropriate, nonetheless, to consider cases concerning judicial review for abuse of discretion for guidance to establish the standard for relevance. In its comprehensive treatment of this issue in *Citizens to Preserve Overton Park v. Volpe*, the Supreme Court stated that review for abuse of discretion is "to be based on the full administrative record that was before the Secretary at the time he made his decision." 401 U.S. at 420, 91 S.Ct. at 825. This seems a proper standard for this case since the purpose of the review is to determine whether the Commissioner considered all the relevant factors, did not consider irrelevant or inappropriate factors and did not make a clear error of judgment. *See Center on Corporate Responsibility, Inc. v. Shultz*, 368 F.Supp. 863, 871 (D.D.C.1973). Materials relevant to this case, then, consist of more than just the Technical Advice Memorandum (Memorandum) released by the Service in connection with the ruling revocation. The Memorandum reflects the results of the Commissioner's determination and, to some extent, the record relied upon. But the Memorandum does not permit review of the "full" record before the Commissioner at the time he made his decision under Section 7805(b).

■ For the reasons stated above, the defendant will be ordered to certify and file all documents and materials considered and/or relied upon directly or indirectly by the Commissioner in making his decision to apply the revocation retroactively. It is highly doubtful that defendant can successfully claim as privileged any document or material certified. I am not prepared, however, to say as a matter of law that in every conceivable circumstance the need of the party allegedly aggrieved by agency action outweighs the claim of privilege.[19] As in *A. O. Smith v. F. T. C., supra,* 403 F.Supp. at 1018, n.55, I am unable to perceive at this point how any claim of privilege could overcome the need of the plaintiff for the entire administrative record. Nonetheless, if the defendant in good faith feels it can meet its very heavy burden of foreclosing the plaintiff in an adversary proceeding from examining fully the basis of an adverse agency determination, it will be permitted to seal those documents or portions of documents comprising the administrative record when the same is filed with the Clerk of the Court. If any document or portions of documents are sealed, duplicate copies of that portion of the administrative record shall also be filed directly in chambers together with specific indications of the precise portion of the document the privilege claim covers and the basis of the privilege assertion.

In light of the disposition made in this case, this opinion need go no further since the documents constituting the administrative record have not been specified. For most of the remaining issues raised by this discovery motion, the Court will await compliance with its order to determine if their resolution is necessary. There are, however, two issues discussed by the parties in their briefs which, if decided at this time, would expedite significantly the progress of this litigation.

### Privileges

■ The defendant has raised the mental process privilege as an objection to discovery of memoranda involved in making the Section 7805(b) determination,[20] including those relied upon by the Commissioner. *See U. S. v. Morgan,* 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429 (1941) (Morgan IV). This claim, however, confuses the mental process privilege with the broader executive privilege.[21] The former privilege was established to prevent inquiry into the mental process by which an administrator arrived at a decision. *See id.* at 422, 61 S.Ct. 999. But both *Morgan* and *Overton Park* concerned the propriety of requiring decision makers to give testimony either in court or by deposition to explain their actions and thus to be subject to oral direct and cross-examination. The Court agrees that the plaintiff here has not yet demonstrated the necessary bad faith to warrant such an examination. *See Citizens to Preserve Overton Park v. Volpe, supra,* 401 U.S. at 420, 91 S.Ct. 814. But the plaintiff has not sought to depose the Commissioner or other responsible officials. What he seeks by his motion are documents and other material. The mental process privilege asserted here simply is not applicable to the plaintiff's present motion.

The defendant has asserted several other privileges to prevent disclosure of documents sought by the plaintiff, most frequently executive privilege. Defendant argues that this privilege, while not constitu-

---

19. An obvious hypothetical is a case in which the administrative record contains classified information the disclosure of which would imperil national security.

20. Defendant's Brief at 20.

21. The defendant has described this privilege as government information privilege, in order, in part, to distinguish it from the constitutionally based executive privilege discussed by the Supreme Court in *United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). The apparent source of the defendant's term is the Proposed Federal Rules of Evidence, 56 F.R.D. 184 (1972). Since the government information privilege proposed in Rule 509 was never adopted and since courts have consistently referred to this privilege as executive privilege, whether or not constitutionally based, this Court prefers to refer to it as executive privilege.

tionally based, derives from important policies long recognized and respected by courts. Foremost among the reasons for its recognition is the promotion of frank and open discussion within the agency in its formulation of policy. *See Kaiser Aluminum & Chemical Co. v. United States,* 157 F.Supp. 939, 945–46, 141 Ct.Cl. 38, (1958) (Justice Reed sitting by designation). *See also Soucie v. David,* 145 U.S.App.D.C. 144, 448 F.2d 1067, 1080–81 (1971) (Wilkey, J., concurring). In *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena,* 40 F.R.D. 318, 324 (D.D.C.1966),[22] the scope of the privilege was defined to include:

> "intragovernmental documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."

The defendant has asserted this privilege to bar production of some 178 documents sought by plaintiff in discovery.

For the reasons stated earlier, the Court finds it unnecessary at this time to examine each document in order to weigh its materiality and relevance against the potential harm to the administrative process of disclosure. *See Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena, supra,* 40 F.R.D. at 327. Even if certain documents are privileged, however, executive privilege has not been asserted properly by the defendant. Because of the possibility that the procedural question will appear again and delay the litigation, I feel constrained to speak to it at this time.

The defendant takes the position that exercise of this informational privilege does not require a formal affidavit by the Commissioner. Formal action by the agency head, under this theory, is necessary only where executive privilege is constitutionally based and is asserted to protect "state secrets." *See United States v. Reynolds,* 345 U.S. 1, 7–8, 73 S.Ct. 528, 97 L.Ed. 727

(1953); *cf.* Proposed Federal Rules of Evidence, 56 F.R.D. 184, 251 (1972).

Whether executive privilege which shields administrative decision-making from complete disclosure has constitutional underpinnings based on the doctrine of separation of powers is an issue better left for another day; its resolution is not necessary to this case.[23] For, this Court can find no persuasive authority to support the defendant's position that executive privilege, constitutional or not, can be asserted by someone other than the responsible agency head, in this case, the Commissioner.

In support of its claim that no affidavit by an agency head is required to claim executive privilege, the defendant cites four cases. In *ISI Corp. v. United States,* 503 F.2d 558 (9th Cir. 1974), the Court of Appeals affirmed a jury verdict denying plaintiff's tax refund claim. The decision makes no mention of the procedure followed by the defendant in asserting the privilege and presumably the plaintiff did not raise the issue on appeal. Thus, the case provides no guidance on the issue at stake in this case.

In *United States v. Beatrice Foods Co.,* 52 F.R.D. 14 (D.Minn.1971), the judge barred the production of certain legal memoranda on the grounds of executive privilege, notwithstanding that the United States had only asserted claims of work-product and attorney-client privilege. A close reading of the opinion, however, reflects the Court's emphasis on the irrelevance of the memoranda rather than the privilege. Further, while the opinion indicates that the judge raised the privilege sua sponte, the main case cited for authority involved a formal claim by the Attorney General. *See Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena, supra.* To the extent the opinion can be read as dispensing with the need of the agency head asserting the privilege, it stands alone and will not be followed.

In *Weir Foundation v. United States,* 508 F.2d 894 (2d Cir. 1974), the Second Circuit

---

**22.** This decision was later affirmed by the D. C. Circuit. 128 U.S.App.D.C. 10, 384 F.2d 979 (1966), *cert. denied* 389 U.S. 952, 88 S.Ct. 334, 19 L.Ed.2d 361 (1967).

**23.** The Supreme Court's opinion in *United States v. Nixon, supra,* 418 U.S. at 712, n. 19, 94 S.Ct. 3090, limited itself to a generalized executive privilege asserted by the President.

affirmed in a footnote the district court decision to bar the production of certain documents held by the Commissioner. The judge, however, relied on a magistrate's report which recommended that the factual material in the documents be produced but the opinions and recommendations contained in them be suppressed because of "the limited relevance . . . the force of the government's contention that the documents were prepared in anticipation of litigation, and the public policy articulated in the Freedom of Information Act . . . ." *Weir Foundation v. United States,* 72–1 U.S.T.C. (CCH) ¶ 9435 (S.D.N.Y.1972). The holding of the magistrate adopted by the district court and affirmed by the Second Circuit does not mention executive privilege. It focuses instead on the Freedom of Information Act (the Act) 5 U.S.C. § 552 (1970) and the policy reflected by the disclosure exemptions. *See* 5 U.S.C. § 552(b)(1)–(9).

Defendant similarly relies heavily on *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975), a case applying the disclosure exemption of 5 U.S.C. § 552(b)(5). The argument apparently is that if the document would qualify for exemption under the Act, then it must be privileged. Put another way, once the defendant shows that the document is exempt under the Act, it has claimed executive privilege. This argument stands the law on its head. *Cf. Pleasant Hill Bank v. United States,* 58 F.R.D. 97, 100 (W.D.Mo. 1973). It transforms the exemption of the Act into a testimonial privilege. *See* Krattenmaker, Testimonial Privileges in Federal Courts: An Alternative to the Proposed Federal Rules of Evidence, 62 Geo.L.J. 61, 80 (1973) [24] (hereinafter cited Krattenmak-

er, Testimonial Privilege in Federal Courts, *supra* ).

In stark contrast to the four cases cited by the defendant, there is abundant authority to support the proposition that this privilege must be claimed formally by the Commissioner. *See e. g., United States v. Reynolds, supra* (Secretary of the Air Force); *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena, supra* (Attorney General); *Kaiser Aluminum & Chemical Co. v. United States, supra* (Administrator of the General Services Administration); *Freeman v. Seligson,* 132 U.S.App.D.C. 56, 405 F.2d 1326 (1968) (Secretary of Agriculture); *Machin v. Zuckert,* 114 U.S.App.D.C. 335, 316 F.2d 336 (1963) (Secretary of the Air Force); *Boeing Airplane Co. v. Coggeshall,* 108 U.S.App. D.C. 106, 280 F.2d 654 (1960); *Black v. Sheraton Corp.,* 371 F.Supp. 97 (D.D.C.1974) (Attorney General); *cf. United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). *See also,* Krattenmaker, Testimonial Privilege in Federal Courts, *supra* at 82, n. 92. Indeed, certain of the cases relied upon by the defendant cite the above cases for authority.

The Court is equally unconvinced that one can distinguish between executive privilege claims that require an affidavit from the agency head and those that do not on the basis of whether the privilege asserted is constitutionally based. Several of the cases noted above where an affidavit was submitted by the agency head did not concern military or diplomatic secrets. *See e. g., Boeing Airplane Co. v. Coggeshall, supra,* 280 F.2d at 660–61; *Black v. Sheraton Corp., supra.* No case cited to the Court recognizes the distinction urged here. Further, the policy asserted to underlie the distinction, that a court cannot review a

---

**24.** Rule 509(a)(2) of the Proposed Federal Rules of Evidence exempted from the "official information" privilege documents available under the Freedom of Information Act. Congress, as noted infra in the opinion, rejected this rule, the effect of which would have been to accomplish the transformation the defendant seeks here. See also Hearings on the Proposed Federal Rules of Evidence Before the Special Subcommittee on Reform of Federal Criminal Laws of the House Comm. on the Judiciary, 93d

Cong., 1st Sess. ser. 2, at 254 (1973) (Judge Friendly):

"[T]he problems of what a citizen should be able to get from a Government agency when he has simply the general interest of the citizen in finding what is going on and the problems of a litigant who has a particularized need are obviously very different and almost by hypothesis what is the right solution for the first cannot be the right solution for the second."

constitutionally based claim of government privilege, and therefore greater assurance of its propriety is required, was rejected in *United States v. Nixon, supra.*

In addition to the four cases and the constitutional distinction discussed above, the defendant relies on Proposed Rule 509(c)[25] to demonstrate that any government attorney can claim the privilege asserted in this case. Defendant's position is that the drafters of the Proposed Rules expressly recognized the so-called "government information privilege," and provided for its assertion by any government attorney. Since, according to the defendant, Congress did not delete Proposed Rule 509(c) because of objection to this procedure, the Court should adopt it. But the defendant does not cite to any authority in the legislative history of the Rules to support his proposition that Congress did not object to the procedure of only requiring a government attorney claim the privilege. Moreover, the simple fact is that Congress deleted that provision during its substantial revision of Rule 509. No mention is made of the precise reason for eliminating subsection (c) in either of the Committee Reports or in the Conference Committee Report. H.R.Rep. No. 93–650, 93d Cong., 1st Sess. 8 (1973); S.Rep. No. 93–1277, 93d Cong., 2d Sess. 11 (1974); H.R.Rep. No. 93–1597, 93d Cong., 2d Sess. 7 (1974) (Conference Report) U.S.Code Cong. & Admin.News 1974, p. 7051. In the absence of any support in the legislative history to justify the defendant's theory, this Court will not embark upon the hazardous task of guessing at Congress' motive in deleting subsection (c).

■ It is perhaps important to keep in mind the policy served by the requirement of a formal claim by the agency head. Executive privilege permits one branch of government to ban disclosure of documents ordinarily discoverable and as such it is "a phase of release from requirements common to private citizens or organizations." *Kaiser Aluminum & Chemical Co. v. United States, supra,* 157 F.Supp. at 944. Thus, the privilege should be invoked with consistency and only after careful consideration. *See United States v. Reynolds, supra,* 345 U.S. at 7, 73 S.Ct. 528; *see also* Krattenmaker, Testimonial Privilege in Federal Courts, *supra* at 82. To permit any government attorney to assert the privilege would derogate both of those interests. It would be extremely difficult to develop a consistent policy of claiming the privilege. Moreover, the judgment of attorneys engaged in litigation is very likely to be affected by their interest in the outcome of the case. *See Thill Securities Corp. v. New York Stock Exchange,* 57 F.R.D. 133, 138 (E.D. Wisc.1972). It is of the greatest importance that the privilege be invoked only when policies it seeks to encourage are seriously threatened. Requiring the agency head to review the documents sought and to claim the privilege where appropriate is the most effective method available to assure consistency and prudence.

Therefore, if the defendant wishes to invoke executive privilege as to any of the documents ordered produced pursuant to this opinion, the Commissioner must make the claim by formal affidavit, specifying the material covered and the reasons for the privilege obtaining. *See Black v. Sheraton Corp., supra,* 371 F.Supp. at 101.

The Commissioner should exercise great caution and prudence in asserting the claim to protect material comprising the administrative record, since they are the materials for which the plaintiff as a party in this adversary proceeding has the greatest need and which are most relevant to judicial review of an administrative determination. The balancing weighs heavily against the defendant; the Commissioner should be careful to claim the privilege as to these materials only where he believes in good faith that the harm of disclosure will over-

---

**25.** Rule 509(c) of the Proposed Rules of Federal Evidence provides in pertinent part:

"(c) *Procedures.* The privilege for secrets of state may be claimed only by the chief officer of the government agency or department ad-

ministering the subject matter which the secret information sought concerns, but the privilege for official information may be asserted by any attorney representing the government. . . . ."

come the obvious relevance to the litigation and the very substantial need of the litigant. *See Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena, supra,* 40 F.R.D. at 327.[26]

An order will be entered in accordance with this Opinion.

26. It should be noted that the Court has refrained from ruling on the various interrogatories propounded by the plaintiff to the defendant which the defendant has either not answered or only partially answered. It is suggested that the defendant review its objections in light of this Opinion and confer with the plaintiff to determine which, if any, of the objections remain in dispute. If objections remain, the parties should so advise the Court.